UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PENELOPE ROBERGE**
    Plaintiff,
v.                                                              CASE NO.: 6:23-cv-00458

**EMERGE HEALTHCARE GROUP, LLC**
    A Florida Limited Liability Company
**FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC**
    A Delaware Limited Liability Company, and
**FIRST CHOICE HEALTHCARE SOLUTIONS, INC.**
    A Delaware Corporation, and
**LANCE FRIEDMAN**,
    individually.

    **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **PENELOPE ROBERGE** by and through her undersigned counsel, sues Defendants, **EMERGE HEALTHCARE GROUP, LLC, FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC, FIRST CHOICE HEALTHCARE SOLUTIONS, INC.** and **LANCE FRIEDMAN** (hereinafter "Defendants"), and alleges as follows:

1.    This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., Florida Minimum Wage Act, Fla. Stat. § 448.110, and Florida common law.

2. The Court has jurisdiction over the FLSA claims pursuant to 29 U.S.C. §216(b) and 28 U.S.C. § 1331.

3. Venue is proper in the Orlando Division of the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to Plaintiff's claims occurred in this District.

4. The unlawful employment practices alleged were committed within Brevard County, Florida.

5. Plaintiff **PENELOPE ROBERGE**("Plaintiff") is and has been a resident of Brevard County, Florida, at all times material herein.

6. Defendant, Emerge Healthcare Group, LLC ("**Emerge**") is a Florida Limited Liability Company organized and existing under the laws of the State of Florida with its principal address located in Brevard County, Florida. Emerge filed its articles of organization on June 9, 2022.

7. Defendant, First Choice Healthcare Solutions, Inc. ("**First Choice**") is a Delaware for- profit corporation organized and existing under the laws of the State of Delaware with its principal address located in Brevard County, Florida.

8. Defendant, First Choice Medical Group of Brevard, LLC ("**Medical Group**") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware with its principal address located in Brevard County, Florida.

9. Defendant, Lance Friedman ("**Friedman**") is and has been a resident of Duval County, Florida, at all times material herein.

**FLSA/FMWA**

10. At all times relevant, Plaintiff was an employee of Defendants within the meaning of FLSA, 29 U.S.C. § 203(e).

11. Defendants are employers as defined by FLSA, 29 U.S.C. § 203(d).

12. At all times material hereto, Defendants First Choice, Medical Group and Emerge were a single enterprise.

13. At all times material hereto, Defendants were joint employers of the Plaintiff.

14. At all times material hereto, Plaintiff was engaged in commerce or in the production of goods for commerce per 29 U.S.C. § 206(a).

15. At all times material hereto, Defendants were an enterprise engaged in interstate commerce per 29 U.S.C. §203(s) because they had employees who handled goods, materials and supplies which moved in interstate commerce and had an annual gross dollar volume of sales made or business done of not less than five hundred thousand dollars ($500,000).

16. At all times relevant to this action, Defendant, Friedman was the CEO or manager of First Choice, Medical Group and Emerge and regularly exercised the authority to: (a) hire and fire employees; (b) determine the work schedules for the

employees of and (c) control the finances and operations of Defendants. By virtue of having regularly exercised that authority on behalf of Defendants, Friedman is/was an employer as defined by 29 U.S.C. §201, et seq.

17. Defendants are in possession of time and compensation records, and responsible for their storage and safekeeping.

**Joint Employer/Integrated Enterprise**

18. On or about June 15, 2020, First Choice, and Medical Group[1] filed Chapter 11 bankruptcy petitions which were jointly administered.

19. The joint plan of reorganization of the First Choice Defendants was confirmed on or about February 21, 2021.

20. Following the confirmation of the reorganization plan, the First Choice Defendants rebranded as "Emerge Healthcare"

21. At all times relevant to the acts which give rise to the claims asserted by Plaintiff, Defendants were doing business as Emerge Healthcare.

22. Defendant, Friedman is the CEO of First Choice, and Manager of Emerge and Medical Group.

23. First Choice is the parent company the corporate Defendants.

24. First Choice does business and operates through its subsidiaries.

---

[1] Collectively, "First Choice Defendants"

25. Medical Group owns the fictitious name, "Emerge Healthcare Group, LLC", Registration number G22000072140.

26. Medical Group and Emerge both maintain their principal place of business at 1344 South Apollo Blvd, Suite 300, Melbourne, Florida 32901.

## I.     Background

27. On or about June 6, 2022, Plaintiff started working for Defendants as a medical assistant at a rate of $20 per hour.

28. Plaintiff worked for Defendants but has not received all wages owed to her.

29. When Plaintiff was paid, those payments were not made timely.

30. Plaintiff received late payment of wages for those workweeks between June 13, 2022, and September 18, 2022.

31. Plaintiff has not received any pay for those hours worked between September 19, 2022, and her final day on or about January 11, 2023.

32. Between September 19, 2022, and January 11, 2023, Plaintiff estimates that she worked approximately 400 hours for which she has not been paid.

33. Defendants agreed to waive the notification requirements of Fla. Stat. §448.110(6)(a).

**Payroll Communications**

34. Unbeknownst to Plaintiff, prior to her employment, Defendants had many issues paying their employees timely.

35. Multiple times in the months preceding Plaintiff's employment, Friedman would correspond with Emerge Employees and tell them that they did not have the funds to make payroll.

*June 2022*

36. On June 16, 2022, Friedman sent out an internal memo to "All Emerge Employees" regarding payroll for June 17, 2022. In the memo, Friedman explains that payroll for June 17, 2022, would not be paid on time. Friedman also explained that it should be paid on or before June 23, 2022.

37. On June 23, 2022, Friedman sent an email with the subject line "Memo from the CEO- Payroll 061722" wherein he states that he was "cautiously optimistic" that payroll could be paid June 24, 2022.

38. On June 24, 2022, Friedman sent an email with the subject line "Memo from the CEO- Payroll 061722" wherein he stated, "as soon as we receive funds we will distribute the 6/17/22 payroll. Next week you will receive this delayed payroll and standard payroll (7/1/22) will be distributed as a separate, on time, check.

39. On June 30, 2022, Friedman sent an internal memo to All Emerge Employees" with the subject line "Payroll Distribution July 1, 2022" wherein he stated that "payroll will not be distributed until next week."

*July 2022*

40. On July 8, 2022, Friedman sent a memo to All Emerge Employees regarding updates for Emerge Healthcare. In the memo, Mr. Friedman states that he expects payroll "in the next 4-6 business days" and confirmed that the employees' United Healthcare plan was inactive.

41. On July 15, 2022, Friedman sent a memo to All Emerge Employees regarding "Payroll Distribution Update" wherein Friedman states that payroll for July 1, 2022, would be distributed on July 18, 2022 and that payroll due on July 15, 2022 would be paid when funds are available. The memo confirms that the United Healthcare plan was still not active, and that the company anticipates that the "investments received next week will bring our obligation current".

42. On July 18, 2022, Plaintiff received an email from Friedman which explained that he borrowed money on credit and paid some employees "who have been waiting the longest". The email confirmed that payroll was delayed again but he hopes to bring everyone current soon.

43. On July 29, 2022, Friedman sent an email Defendants' employees stating,

> Team,
>
> Thank you for your continued support and belief in Emerge Healthcare.
> As we push through this together, we understand your frustration and concerns. You will be paid all payroll and expenses that are due.
> We have made significant progress in closing the current investors this week. As soon as funding is received, we will begin distribution of payroll checks.
> We will remain in contact as information is available. When we have payroll addressed, we will also satisfy the amounts in arrears with both United Healthcare, Florida Blue as well as continuing operations.
> Lance

*August*

44. On August 5, 2022, it was reported that Defendants were under federal investigation for not paying its employees in accordance with the FLSA. [2]

45. On August 10, 2022, Gillian Lee, Director of Human Resources, ("Lee") requested Plaintiff's banking information to wire payroll to her account. She also requested that Plaintiff "remain judicious in discussing [her receipt of payroll funds]" because other employees would not be paid.

46. On August 11, 2022, Lee informed Plaintiff that her payroll checks for the workweeks of June 13, 2022- July 10, 2022, were wired to her account.

---

[2] https://www.wftv.com/news/local/struggling-brevard-county-medical-firm-now-under-federal-investigation/LBDQFG5IUVHSFLUY43DLO6LMYM/ (last accessed March 8, 2023).

47. On August 12, 2022, Lee sent an email to Defendants' employees explaining that they would not make payroll again but would distribute a $500 bonus "as a small token of our appreciation of your loyalty and support."

48. On August 26, 2022, Friedman sent an update to Defendants regarding their financial state and explained that he personally guaranteed loans for the company which would provide payroll relief.

*September*

49. On Friday, September 9, 2022, Plaintiff emailed Lee and Friedman an email with the subject line, "pay checks" wherein she asked, "Any updates??".

50. On Wednesday, September 14, 2022, Plaintiff emailed Lee and Friedman an email with the subject line, "pay checks" which stated:

> Good Morning,
> Once again just checking in to see if you guys have an update or anything since we haven't heard from you in a while and I got no response from my email from Friday.
> Thanks

51. On September 14, 2022, Friedman responded explaining that they have been trying to obtain funding for payroll and other expenses and that would soon provide a more definitive update.

52. On September 16, 2022, Lee sent an email explaining that certain back pay had been wired to Plaintiff's account.

53. On September 27, 2022, Lee sent an email stating that Plaintiff would receive $500, so that Plaintiff had something to "fall back on" due to the upcoming storm system; an apparent a reference to Hurricane Ian which made landfall in Florida on September 28, 2022. Lee asked that Plaintiff "remain judicious in discussing this", as not all employees would receive the bonus.

*October*

54. On October 20, 2022, Plaintiff was informed that her "9/23/22 payroll check had been wired" to her account.

55. Plaintiff has not received any money from Defendants since this transfer, but she continued to work for the benefit of Defendants.

*December*

56. On Thursday, Dec 1, 2022, at 4:33 PM, Plaintiff emailed Lee, Friedman and Phil Keller, Defendants' CFO ("Keller"):

> Afternoon,
> Once again, we're told that monies will be in on Wednesday so we can go to work and have clinic open, yet no information or texts were sent and no monies received yesterday. I sent a text today to Gillian just to get the same BS response that we've been getting all along. Funds haven't been received yet. This is absurd how you want people to continue working their asses off and not get any money. For god sake it's the damn holidays!

57. On Thursday, Dec 1, 2022 at 4:38 PM, Friedman responded:

> This is not Gillian's fault. We have a bona fide investor who verbally committed received investor documents and has yet to

> fund and close. If we cannot and he backs out we have no other bridge options viable and no capital viable till we are able
>
> To file the registration statement as explained on the call. We have very little revenue and hence collections. While we were losing nearly $900,000 per month and have made cuts and have had departures we are still have negative cash flow of $175k and we only collect in total funds not even sufficient to fund 2 net payrolls which does not include any payroll for senior administrative staff. We are reviewing the next steps now should we not be able to close the funding.
>
> Lance

58. On Thursday, Dec 1, 2022, at 4:53 PM, Plaintiff wrote to Lee, Friedman and Keller:

> I not once said this was Gillian's fault at all, she's the one that communicates to everyone what is being told by you. As I was told via text on Tuesday night the investor will be transferring funds by the end of the day. Was that just so we can show up to bust our asses for nothing? Yes I know I left due to a death in my family but I still left my house, wasted gas that I don't have to find out once again I'm NOT getting paid. I as well as everyone else have a family to support, bills to attempt to pay (which I'm behind and about to get shut off), food to provide. None of which matters to you or anyone else since some of you are well off. Yes I've stuck around since I thought things were getting a little better but promises don't pay bills or provide food.

59. Minutes, later, Friedman responded, "We understand your frustration we are Trying desperately to have the investor follow through with his commitment."

60. On Friday, January 6, 2023, at 11:43 am, Plaintiff emailed Lee, Friedman and Keller:

> Good Morning/Afternoon,
> I'm checking in to see what updates you have on any of our back pay, haven't heard from anyone since the meeting we had about 3 weeks ago or so. Greatly would appreciate some type of update since we are up to another pay day.

61. On Friday, January 6, 2023, at 4:47pm, Lee sent Plaintiff an email with the subject line "1099 Contractor Agreements- Effective 01/09/2023" which stated:

> Penny,
> Attached is a 1099 Contractor Agreement for your review and execution. This agreement is effective Monday January 9, 2023.
>
> Initially the Company had advised the start date of you providing services as a contractor would commence Monday, December 26, 2022. That date is now January 9, 2023. Please be advised the pay period of December 26 thru January 8, 2023, will be processed as a standard period.
>
> Having this change of date has given the company the opportunity to let employees use both Holiday pay and accrued PTO to cover time for both of these weeks. As we have discussed previously, payroll will be distributed when funding becomes available.

62. The Contractor Agreement included with the January 6, 2023 email, was a letter signed by Lance Friedman which stated, in part, "Effective January 8, 2023, your employment with First Choice Medical Group of Brevard, LLC *dba* Emerge Healthcare Group, LLC ("Company") is terminated."

63. All conditions precedent to the institution and maintenance of this cause of action have been met or waived.

64. Plaintiff has retained the law firm of Arcadier, Biggie & Wood, PLLC. to represent her interest in this matter and Plaintiffs have agreed to pay said firm a reasonable attorney's fee for its services.

### COUNT I: VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FAIR LABOR STANDARDS ACT UNDER FEDERAL LAW

65. Plaintiff re-alleges and incorporates paragraphs 1 through 64 of this Complaint as set forth in full herein.

66. Defendants violated 29 U.S.C. § 206, the ("Federal minimum wage provision") by failing to compensate the Plaintiff at a rate not less than $7.25 per hour.

67. Plaintiff is owed for approximately 400 hours which she worked for the Defendants yet remains uncompensated.

68. Plaintiff was entitled under FLSA to be paid minimum wages for each hour worked during her employment with Defendants.

69. Defendants are not exempt from the minimum wage provision of the FLSA. Paying Plaintiff less than minimum wage is a violation of the Fair Labor Standards Act.

70. Defendants are joint employers of Plaintiff.

71. Defendants are a single integrated enterprise.

72. Defendants' actions were intentional, reckless or malicious.

73. Defendants' actions were not done in good faith.

74. As a direct, foreseeable, and proximate cause of Defendants' actions Plaintiff has been damaged.

75. Specifically, Defendants are liable to the Plaintiff for unpaid minimum wages, liquidated damages, and attorney fees and costs in conjunction with this action

**WHEREFORE**, Plaintiff pray for judgment against Defendants for all damages to which he may be entitled, including, but not limited to:

A. Unpaid minimum wages found to be due and owing;

B. An additional and equal amount of liquidated damages;

C. An award of reasonable attorney fees and all costs incurred herein; and;

D. All other damages to which Plaintiff may be entitled

### COUNT II: VIOLATION OF THE
### FLORIDA MINIMUM WAGE ACT AND FLORIDA CONSTITUTION

76. Plaintiff re-alleges and incorporates paragraphs 1 through 64 of this Complaint as set forth in full herein.

77. This is an action for unpaid minimum wages owed to the Plaintiff and attorney's fees and costs are awardable pursuant to Florida Statue § 448.110.

78. The FMWA and Florida Constitution mandate an employer pay its employees at least the minimum wage for each hour worked. FLA. STAT. § 448.110; Fla. Const., Art. X, § 24(c).

79. Plaintiff worked for Defendants but was not paid at least the Florida Minimum Wage for each and every hour worked as required by the FMWA during one or more weeks of work.

80. Defendants failed and/or refused to compensate Plaintiff at the minimum hourly wage for each and every hour worked as required under the FMWA.

81. Defendants were aware they had suffered and permitted Plaintiff to work without proper compensation for minimum wages under the FMWA.

82. Defendants knew, or showed reckless disregard for the fact, that their failure to pay Plaintiff as alleged herein was in violation of the FMWA.

83. Defendants' practice of failing to pay Plaintiff the appropriate minimum wage due violated the minimum wage provisions of the FMWA. See FLA. STAT. § 448.110.

84. As a result of Defendants' unlawful practice, Plaintiff has suffered damages in the form of unpaid wages.

85. The actions of Defendants complained of herein were willful within the meaning of the FMWA at § 448.110.

86. Because of Defendants' actions, Plaintiff had to retain counsel to pursue this cause of action and is entitled to recover attorney's fees and costs connected with this suit.

87. As a result of the unlawful acts of Defendants, Plaintiff has been deprived of compensation in amounts to be determined at trial.

88. Defendants' failure to compensate Plaintiff at the Florida Minimum Wage for all hours worked was not in good faith.

89. Plaintiff is entitled to recover his unpaid wages plus an equal amount of liquidated damages.

90. Defendants are joint employers of Plaintiff.

91. Defendants are a single integrated enterprise.

92. Defendants are jointly and severally liable to Plaintiff for unpaid wages, liquidated damages, and attorney's fees and costs.

93. All conditions precedent to bring this claim have been met.

**WHEREFORE**, Plaintiff pray for judgment against Defendants for all damages to which she may be entitled, including, but not limited to:

  A. Enter judgment for Plaintiff and against Defendants on the basis of Defendant's violations of the minimum wage provisions of the Florida Minimum Wage Act, Title XXXI, Sec. 448.110;

B. Award Plaintiff actual and compensatory damages in the amount shown to be due for unpaid minimum wages;

C. Award Plaintiff an equal amount in liquidated damages;

D. Award Plaintiff reasonable attorney's fees and costs of suit, pursuant to Fla. Stat. §448.110 and §448.08;

E. Hold Defendants jointly and severally liable to Plaintiff for unpaid wages, liquidated damages, and attorney's fees and costs; and

F. Grant such other and further relief as this Court deems equitable and just.

## COUNT III: UNPAID WAGES

94. Plaintiff re-alleges and incorporates paragraphs 1 through 64 of this Complaint as set forth in full herein.

95. This is an action for unpaid wages owed to the Plaintiff and attorney's fees and costs are awardable pursuant to Florida Statue § 448.08.

96. Plaintiff entered into an employment agreement with Defendants wherein Plaintiff would work for Defendants in exchange for $20.00 per hour.

97. Defendants failed to pay Plaintiff for approximately 400 hours at a rate of $20.00 per hour.

98. Plaintiff has not been paid for any work done for Defendants for work since approximately September 19, 2022.

99. Plaintiff fully complied with the terms of the parties' agreement by performing her job duties in a professionally competent manner.

100. Defendants accepted the benefit of Plaintiff's labor but breached their employment agreement by failing to pay Plaintiff her wages.

101. Plaintiff was damaged in the amount of approximately $7,968.00 as a result of wages being withheld.

102. Defendants' actions were willful and not in good faith.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for all damages to which she may be entitled, including, but not limited to:

A. Judgment for the back pay found to be due and owing to the Plaintiff;

B. Award of reasonable attorney's fees, cost and interest incurred herein, and;

C. Such other relief as this Court deems just and equitable.

### COUNT IV: FLSA RETALIATION

103. Plaintiff re-alleges and incorporates paragraphs 1 through 64 of this Complaint as set forth in full herein.

104. Plaintiff repeatedly complained about not receiving her pay timely and working without pay, i.e. for less than the minimum wage, throughout her entire tenure with Defendants.

105. After weeks of working without pay and with the holidays fast approaching, Plaintiff's complaints about her unpaid wages became more candid and unequivocal in December 2022.

106. Most recently, on January 6, 2023, Plaintiff sent an email to the Defendant's executive officers asking about the status of her back pay which they had discussed at a meeting three (3) weeks prior, shortly after her December emails. Plaintiff also expressed concern that she would not be paid on the upcoming payday.

107. Plaintiff was engaged in protected activity each time she complained about not receiving her pay, including her December 2022 and January 6, 2023, emails.

108. After Plaintiff engaged in protected activity Defendant terminated Plaintiff's employment.

109. Plaintiff's termination constituted an adverse employment action.

110. Plaintiff was terminated because she engaged in protected activity.

111. Pursuant to 29 U.S.C. §215(a)(3) it is unlawful for any person to "discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding".

112. As a result of Defendants' intentional, willful, and unlawful acts, Plaintiff has suffered damages plus incurring reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants, for all damages to which she may be entitled, including, but not limited to:

a. Lost wages.
b. Compensatory damages;
c. Liquidated damages.
d. An award of prejudgment interest (to the extent liquidated damages are not awarded);
e. All available actual damages, compensatory damages, and punitive damages to which Plaintiff may be entitled
f. An award of reasonable attorney's fees and all costs incurred herein;
g. Such further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues herein triable by jury.

DATED this 14th day of March 2023.

**ARCADIER, BIGGIE & WOOD, PLLC.**

*/s/ Joseph C. Wood, Esq.*
Joseph C. Wood, Esq.
Florida Bar No.: 0093839
Attorneys for Plaintiffs
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: Office@ABWlegal.com
Secondary Email: Wood@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075